[Civ. No. 2546.    First Appellate District, Division One.—March 10, 1919.]

GEORGE K. FORD, Plaintiff and Appellant, v. FRANK FREEMAN et al., Respondents; WILLIAM M. CANNON, Defendant and Appellant.

[1] APPEAL—MATTERS REVIEWABLE ON APPEAL FROM JUDGMENT.—Where judgment was entered on June 12, 1911, notices of intention to move for new trial filed September 8th and 11th thereafter, and notices of appeal filed December 7th and 8th following, the court on appeals from judgments could consider the insufficiency of the evidence to justify the findings and judgment of the trial court, though the order denying motions for new trial was not entered until after the amendments to sections 956 and 963 of the Code of Civil Procedure, taking away the right of appeal from orders denying motions for a new trial.

[2] ATTORNEY AND CLIENT—CONTINGENT FEE—CONTRACTS BETWEEN ATTORNEYS—EVIDENCE.—In this action between four attorneys involving their rights to share in a contingent fee, the undisputed evidence shows that the plaintiff, the cross-complainant and two defendants (four attorneys in all) were associated together for one client throughout a litigation and that each performed such services as were required of him.

[3] ID.—ATTORNEYS ENGAGED IN SAME LITIGATION—OMISSION OF COURT TO FIND.—Attorneys who jointly undertake to prosecute or defend a lawsuit are entitled, in the absence of an express agreement to the contrary, to share equally in the compensation, and it therefore follows that the trial court should have found, either that there was an express agreement between these four attorneys as to an equal division of the contingent fee or else the court should have found as a fact that there was no agreement whatever between them upon the subject of fees, in which case the court should have found as a legal result the existence of an implied agreement growing out of their common venture for an equal division of whatever their share in the recovery might be. In either event the defendants would not have been entitled to a judgment in their favor.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  E. P. Mogan, Judge. Reversed.

The facts are stated in the opinion of the court.

Stanley Moore for Plaintiff and Appellant.

Joseph E. Reardon for Defendant and Appellant.

Garret W. McEnerney, of Counsel for Plaintiff and Appellant and Defendant and Appellant.

George R. Freeman and Frank H. Gould for Respondents.

RICHARDS, J.—These are two appeals from a judgment in favor of defendants, which, by stipulation of the parties, were printed in the same transcript and have been briefed and argued together.

[1] The judgment was entered June 12, 1911. The notice of appeal of the plaintiff Ford was filed December 7, 1911. The cross-complainant Cannon's notice of appeal was filed November 8, 1911. The plaintiff's notice of intention to move for a new trial was filed September 8, 1911, and that of the cross-complainant was filed September 11, 1911. The order denying both motions was entered December 4, 1916, after the amendment to section 963 of the Code of Civil Procedure, taking away the right of appeal from orders denying motions for a new trial, and also after the amendment of section 956 of the same code, providing that upon appeal from the judgment the court may review orders made on motion for a new trial. Upon this state of the record the respondents herein assert that this court cannot consider the point as to the insufficiency of the evidence to justify the findings and judgment of the trial court. There is no merit in this contention. (*Wilcox* v. *Hardisty*, 177 Cal. 752, [171 Pac. 947].)

In order for a proper determination of this cause it is necessary to give a brief review of the facts of this case, which are substantially undisputed. They are these: On April 10, 1901, one Samuel C. Pierce received serious personal injuries while in the employ of the Mountain Copper Company, in the mine of said company in Shasta County. In the month of January, 1902, Pierce employed the plaintiff herein, George K. Ford, an attorney having his offices in San Francisco, to institute an action against the Mountain Copper Company for damages arising out of his said injuries, upon a contingent fee of fifty per cent of the recovery, the agreement to this

effect being in writing. It was understood at the time that
Mr. W. M. Abbott would be associated with Ford in said liti-
gation. It was at first contemplated that the action would be
commenced in Shasta County. Not long after the employ-
ment of Mr. Ford he, in the city of San Francisco, met the
defendant, Frank Freeman, also an attorney, having his offices
in Willows, Glenn County, and in a conversation there held
told the latter that he had a case similar to one in which
Freeman had been recently interested, and that he would
like to associate Freeman with him in his case. Ford and
Pierce differ as to which first suggested the employment of
Freeman, but the difference is immaterial. In the early part
of July, 1902, Mr. Abbott, who had already prepared certain
tentative forms of complaint, wrote to Mr. Freeman stating
the desire of Mr. Ford, Mr. Pierce, and himself to associate
Mr. Freeman with Ford and himself in the case. A cor-
respondence followed, in which Freeman expressed his will-
ingness to come into the case, after which Pierce came into
consultation with Freeman, who took his statement and the
names of his witnesses, and also took steps looking to the
preparation and filing of a complaint. Shortly thereafter Mr.
Abbott, having undertaken certain other employments, with-
drew from the case, and it would seem that Mr. Ford also
had concluded to withdraw, leaving Pierce free to make such
arrangements as he might see fit with Freeman as to its further
conduct. There is some confusion in the evidence as to this
matter, but at any rate not long thereafter, in the early part
of September, 1902, Pierce and Freeman entered into a writ-
ing by which Freeman alone undertook to conduct Pierce's
litigation for a contingent fee of one-half of the recovery.
Thereafter and on September 20, 1902, Freeman requested
Mr. Donahue, who shared offices with him in Willows, to be
associated with him in the case. About the 1st of October,
1902, Donahue came down to San Francisco and met Mr. Ford
in the office of Mr. Cannon there. Mr. Cannon had formerly
been a partner of Mr. Freeman in the practice of the law,
and the relations between himself and Mr. Freeman and Mr.
Donahue were cordial. At the time of his visit to San Fran-
cisco Mr. Donahue had drafted and brought down with him
a form of complaint for the institution of an action on Pierce's
behalf in the federal court, and for that reason stated to Mr.
Cannon that he and Mr. Freeman wished to associate him

in the case. Cannon assented to this, and they went over the complaint together and agreed it should be redrafted. This was done by Cannon, who testified that at the time the matter of Mr. Ford's connection with the case was discussed. At that time Ford and Cannon were not acquainted. Upon this occasion also Cannon states that the matter of the division of the fee was considered, and that Donahue then stated that the fee in case of a recovery was to be divided equally among the four attorneys. Whether or not this be taken as an undisputed fact is not very material, for the reason that, we think, the practically uncontradicted proofs show that not long thereafter a letter was written by Donahue to Ford to the effect that the fee in the event of recovery was to be divided equally among the four attorneys in the case. Mr. Donahue states that he does not remember having written such a letter, and the letter itself was destroyed in the great fire of 1906; but the number and clear recollection of the witnesses who testify to the existence and contents of this letter put the matter beyond dispute. The complaint when drafted by Mr. Cannon was signed by him with the names of the four attorneys, and in that form was filed on October 6, 1902. The case proceeded through the successive steps usual to the preparation and trial of a cause, and it cannot be questioned that during all of its stages the names of the four attorneys appeared as attorneys of record in the case, and that each and all of them knew that such was their, and each of their, ostensible relation to the case. The part which each took in the preparation and trial of the case was not equal. Mr. Ford, while frequently consulted and occasionally corresponded with by the defendants herein, did not actively take part in the trial. Mr. Cannon, on the other hand, took the leading part in the trial of the cause and the preparation and hearing upon appeal. As costs and expenses were required, each of these paid such expenses as the occasion required. Upon the trial the plaintiff Pierce recovered a judgment for fifteen thousand dollars, which judgment was affirmed upon appeal on February 25, 1905. On the day of the affirmance of the judgment, Mr. Freeman took from Mr. Pierce an assignment of it to himself, and thereafter and on August 30, 1905, received from the Mountain Copper Company the sum of fifteen thousand one hundred dollars in full satisfaction of the said judgment. One-half of this sum Freeman

delivered to the plaintiff Pierce. The other half was substantially divided between himself and Donahue. The cross-complainant Cannon herein having learned of the settlement of the suit, began inquiring as to his proportion of the fee. These inquiries, in the absence of Mr. Freeman in the east, resulted in the sending by Mr. Donahue of a check for $750 to Mr. Cannon, which the latter received as upon account, still insisting upon his right to an equal one-fourth of the fee. Ford had received nothing, and had been out quite a sum in expenses, and being able to get no satisfaction commenced this action.

His complaint herein, after referring briefly to Pierce's injuries and cause of action, alleges an agreement between himself, Freeman, Donahue, and Cannon for an equal division of the contingent fee in event of a recovery, and that the contract which Pierce made with Freeman was made for the benefit of the four, and that whatever sum he had received thereunder he had received in trust to divide the same equally among the four; and that said Freeman had received the sum approximately of seven thousand five hundred dollars as such fee, and to be held as such trust, and that he and said Donahue had converted the same to their own use, and had failed and neglected to pay to the plaintiff herein his equal share of the same. He further averred that the defendants were insolvent, and hence prayed for a receivership to take charge of and properly disburse the said trust fund, and for general equitable relief. The defendants Freeman and Donahue appeared and answered this complaint, denying all of the material averments as to the interest and right of the plaintiff in or to any portion of the aforesaid fee. Mr. Cannon, who had been also made a defendant, appeared with a cross-complaint, setting forth substantially the same matters contained in the original complaint. The defendants also answered this cross-complaint with like denials.

Upon the trial of the cause the foregoing facts were established by practically undisputed proofs. The trial court made its findings and rendered its judgment in the defendants' favor. It found that while the plaintiff Ford had originally had an agreement with Pierce for the prosecution of his case upon a contingent fee of one-half of the recovery, this agreement had been abandoned and terminated by him prior to

the making of the Freeman contract; that the said contract between Freeman and Pierce had been entered into by Freeman alone and for his own use and benefit, and that neither the plaintiff Ford nor the cross-complainant Cannon were in any wise interested therein; that the said plaintiff Ford and cross-complainant Cannon did in fact perform services in the prosecution of the Pierce action subsequent to the execution of the Freeman contract, and that said Freeman had paid to said Cannon the sum of $750, but had not paid to the plaintiff any sum whatever; that said Freeman had collected on account of the judgment obtained in said action the sum of $15,170.80, and had delivered to said Pierce his due share of said sum, and that as to the portion thereof retained by him no trust existed in favor of either Ford or Cannon. As a conclusion of law from these findings of fact the court adjudged that the plaintiff and cross-complainant take nothing, and that the defendants Freeman and Donahue have judgment for their costs.

The appellants herein contend that the foregoing findings of the trial court are unsupported by the evidence, and that the judgment based thereon must be reversed.

[2] We agree with this contention. The undisputed evidence in this case shows that the plaintiff Ford, the defendants Freeman and Donahue, and the cross-complainant Cannon were associated together as attorneys of record for Pierce from the inception of his action against the Mountain Copper Company until the termination of said action through the settlement thereof by the defendant therein, after judgment for practically the whole amount of such judgment; that they each performed such services as such attorneys of record in said action as were required of them during the course thereof. The practically undisputed evidence also shows that prior to the inception of such action the defendant Donahue, purporting to act on behalf of both himself and his associate Freeman, had an understanding evidenced by a letter written by him, to the plaintiff Ford, the contents of which were fully and sufficiently proven, to the effect that these four attorneys were each to share equally in the contingent fee of one-half of the recovery in said action in the event that a recovery was had therein. If the defendant Donahue was acting with authority from his associate, Freeman, in thus creating this

understanding, then both defendants are bound by it, and the
trial court should have found that such was the agreement.
If, on the other hand, said Freeman, as the sole contracting
attorney in the contract with Pierce, was not to be held bound
by the understanding thus set forth by Donahue, then it un-
disputably follows that there was no agreement between these
four lawyers as to the matter of fees; and if this be taken
to be the fact, then it also undisputably follows that these
four attorneys were joint adventurers in the conduct of a
litigation for a common client, their and each of their fees
being contingent upon the success of their mutual endeavors
to obtain a recovery for their client in the case, none of them
being entitled to any fees from each other or from the client
in the absence of such recovery.   Nowhere is there any hint
in the case of any other understanding between these four at-
torneys, unless the understanding to precisely the same effect
undertaken to be expressed by the Donahue letter is to be
given effect.   This being so, we think the rule declared in
6 Corpus Juris, section 334, should be given application to this
case.   Said rule is expressed as follows:   **[3]**  ''Attorneys
who jointly undertake to prosecute or defend a lawsuit are
entitled, in the absence of an agreement to the contrary, to
share equally in the compensation.''   The same rule in
slightly different form is expressed in 2 Thornton on Attor-
neys, section 469, while the following cases fully sustain the
rule: *Robarts* v. *Haley,* 65 Cal. 397, [4 Pac. 385]; *Gill* v.
*Mayne* (Iowa), 162 N. W. 24; *Seneff* v. *Healy,* 155 Iowa, 82,
[135 N. W. 27]; *Columbus* v. *Sheehy,* 43 App. Cas. (D. C.)
462.

If the foregoing views of the facts and the law of this case
be correct, it follows that the trial court should have found
either that there was an express agreement between these four
attorneys as to an equal division of this contingent fee, or
else the court should have found as a fact that there was no
agreement whatever between them upon the subject of fees,
in which case the court should have found as a legal result
the existence of an implied agreement growing out of their
common adventure for an equal division of whatever their
share in the recovery might be.   In either event the defend-
ants would not have been entitled to a judgment in their
favor.   By reason of the failure of the trial court to make

a finding either way upon this vital issue in the case, the judgment must be reversed. It is so ordered.

Waste, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 8, 1919.

Shaw, J., Lawlor, J., Melvin, J., Wilbur, J., and Lennon, J., concurred.